THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRON K. GREEN *et al.*,

    *Plaintiffs*,

v.

                                  Civil Action No. ELH-19-2068

MULETA T. OBSU, M.D., *et al.*,

    *Defendants*.

## MEMORANDUM OPINION

This case arises from the medical treatment provided to plaintiff Darron K. Green in 2015, while he was a prisoner in the Central Maryland Correctional Facility ("CMCF"). ECF 17 ("Amended Complaint"). According to Mr. Green, despite repeated complaints to medical staff at CMCF about the malfunctioning of a neurostimulator device implanted in his left leg, he did not receive adequate medical care for seven months. That delay allegedly caused a near-fatal infection and impeded his release from incarceration to home detention.

In an Amended Complaint, filed by counsel, Mr. Green and his wife, Lolita Munir, have sued Wexford Health Sources, Inc. ("Wexford") and three physicians employed by Wexford: Muleta T. Obsu, M.D.; Bolaji Onabajo, M.D.; and Syed Rizvi, M.D. *Id.* ¶¶ 2-6.[1] The Amended Complaint contains seven counts. Counts I, II, and III assert negligence claims against Dr. Obsu, Dr. Onabajo, and Dr. Rizvi, respectively. ECF 17, ¶¶ 52-55, ¶¶ 56-59, ¶¶ 60-63. Count IV lodges a claim against Wexford for "Respondeat Superior." *Id.* ¶¶ 64-65. Count V alleges a claim against all defendants for

---

[1] Plaintiffs filed suit in the Circuit Court for Baltimore City on August 17, 2018. ECF 1 ("Notice of Removal"); ECF 3 ("Complaint"). The case was then transferred to the Circuit Court for Howard County. Plaintiffs amended their Complaint on June 27, 2019, adding a count under 42 U.S.C. § 1983. *See* ECF 17. Thereafter, Wexford removed the case to this Court on the basis of federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441.

loss of consortium. *Id.* ¶¶ 66-67. Count VI, brought against all defendants under 42 U.S.C. § 1983, alleges violations of the Eighth and Fourteenth Amendments to the Constitution. ECF 17, ¶¶ 68-76. In Count VII, plaintiffs assert a claim of "Gross Negligence" against all defendants. *Id.* ¶¶ 77-83. Plaintiffs seek compensatory and punitive damages, attorneys' fees, and costs.

The individual defendants answered the Amended Complaint on July 19, 2019. ECF 20. But, Wexford moved to dismiss or strike Counts VI and VII, pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 12(f). ECF 21. The motion is supported by a memorandum of law. ECF 21-1 (collectively, the "Motion"). Plaintiffs oppose the Motion (ECF 24, "Opposition"), and provided one exhibit. ECF 24-2. In their Opposition, plaintiffs contend that should the Court grant the Motion, they should be granted leave to amend the suit. ECF 24 at 7. Wexford has replied. ECF 25.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant it.

## I.    Factual Background[2]

Prior to Mr. Brown's incarceration, he suffered a crush injury to his left leg. ECF 17, ¶ 12. To treat chronic pain in his leg, Mr. Green had a nerve stimulator implanted in his low back/buttocks. *Id.* The stimulator managed Green's chronic leg pain "to the point where he was able to perform most, if not all, activities of daily living pain free." *Id.*

In 2015, Mr. Green was incarcerated at CMCF, a Maryland correctional institution. *See id.* ¶ 8. Wexford, a health care company, had a contract with the State to provide medical services to

---

[2] Given the procedural posture of the case, I shall assume the truth of the facts alleged in the Amended Complaint. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

prisoners in Maryland correctional facilities, including CMCF.  *Id.* ¶ 3.  Drs. Obsu, Onabajo, and Rizvi were employed by Wexford and worked at CMCF.  *Id.* ¶¶ 4-6.

On July 22, 2015, Mr. Green presented to Dr. Rizvi with a concern that his nerve stimulator had malfunctioned or dislodged.  *Id.* ¶ 14. Mr. Green complained to Dr. Rizvi of knee pain and swelling, which had begun a few days earlier. *Id.* Dr. Rizvi noted that Mr. Green needed "urgent neurosurgical evaluation[.]"  *Id.*  However, Dr. Rizvi allegedly "failed to communicate that finding to anyone or schedule that evaluation." *Id.*  Consequently, "no follow up neurosurgical evaluation was requested."  *Id.*

On August 3, 2015, Mr. Green returned to CMCF's medical department for an evaluation of persistent pain in his left leg.  *Id.* ¶ 15.  During the visit, Dr. Obsu ordered a CT scan of Mr. Green's leg, but the order "was never transmitted to the correct parties" and no CT scan was ever performed. *Id.* ¶ 16.

Mr. Green returned to Dr. Obsu on August 17, 2015.  *Id.* ¶ 17. Again, Mr. Green complained of ongoing pain in his left leg. *Id.* Dr. Obsu diagnosed an abscess on Mr. Green's left knee, which he drained. *Id.* ¶ 18. After prescribing an antibiotic for Mr. Green, Dr. Obsu discharged Mr. Green back to general housing. *Id.* According to plaintiff, Dr. Obsu's failure to schedule or recommend a surgical consultation was "[c]ontrary to the acceptable standards of medical care[.]" *Id.* ¶ 19.

After more than a month of worsening symptoms, Mr. Green returned to the medical department on August 31, 2015.  *Id.* ¶ 20.  Mr. Green told medical staff that "he had been sweating so profusely that he felt like he was going to lose consciousness, and that he needed to have his blood pressure . . . checked."  *Id.*  Mr. Green also had a draining wound on his leg from his nerve stimulator, "which was warm and tender to the touch." *Id.*

During this visit, non-party Chika Ezenwachi, RN noted that Mr. Green was sweating profusely. *Id.* ¶ 21. Additionally, Dr. Onabajo noted swelling and ulceration on Mr. Green's thigh, toward the knee. *Id.* Records from the visit reflect that Mr. Green had a symptomatic fever, and that Mr. Green was told to follow-up if his condition worsened or he had no improvement within four days. *Id.* ¶ 23.

Dr. Onabajo allegedly ordered Mr. Green to undergo several diagnostic tests, including several radiology exams and a complete blood panel. *Id.* ¶ 24. Dr. Onabajo also continued Mr. Green on "anti-inflammatory and cold medicine prescriptions." *Id.* ¶ 25. But, Mr. Green alleges that no tests were performed. *Id.* ¶ 24. And, despite Mr. Green "displaying obvious signs of an overwhelming bacterial infection," he released Mr. Green back to his cell to "suffer with tremors, severe diaphoresis, and incredible pain and discomfort[.]" *Id.* ¶ 26.

Mr. Green received no follow-up care until September 25, 2015, when he saw Dr. Rizvi. *Id.* ¶¶ 27-28. At the time, Mr. Green had a "lateral popliteal infection with pus draining from his left leg." *Id.* ¶ 28. Dr. Rizvi did not request a surgical consultation. *Id.* ¶ 29. Instead, Dr. Rizvi prescribed Zyvox, an antibiotic used to treat Methicillin-resistant Staphylococcus Aureas ("MRSA"), and returned Mr. Green to his cell. *Id.*

Mr. Green returned to the medical facility three days later. *Id.* ¶ 30. By this point, portions of Mr. Green's nerve stimulator were "protruding from his left leg." *Id.* Nurse Ezenwachi noted that wires from the nerve stimulator were sticking out of Mr. Green's leg. *Id.* at ¶ 31. Nonetheless, Mr. Green was treated with an ace bandage, lotion, and ibuprofen, and then returned to his cell. *Id.* ¶ 32.

About one month later, on October 21, 2015, Mr. Green underwent a "preoperative evaluation . . . in preparation for surgery to remove the defective nerve stimulator." *Id.* ¶ 33. Following the evaluation, Mr. Green was seen by Charles Park, M.D. at Mercy Hospital in Baltimore. *Id.* ¶ 34.

During the visit, Dr. Park "became alarmed" when he noticed Mr. Green had developed a "severe infection throughout his body." *Id.* Dr. Park ordered immediate IV antibiotics and further noted that Mr. Green should be scheduled "for urgent and immediate" surgery to remove the nerve stimulator once the infection was controlled. *Id.* ¶ 35.

Mr. Green received a peripherally inserted central catheter ("PICC") line sometime between November 3 and 5, 2015. *Id.* ¶ 36. And, Mr. Green was moved to the "Jessup Regional Infirmary" on November 6, 2015. *Id.* at ¶ 37. Plaintiff alleges that during the transfer, the PICC line was "precariously hanging from [his] chest" and "left uncovered and exposed to the elements." *Id.*

On November 7, 2015, Mr. Green advised the attending doctor that the abscess had begun draining from the area where the nerve stimulator was protruding from his left. *Id.* ¶ 38. Despite Mr. Green experiencing agonizing pain, Dr. Park advised Mr. Green that he had to complete the antibiotic treatment before surgery could be performed to remove the nerve stimulator. *Id.* Mr. Green remained in the infirmary for the next eleven days. *Id.* ¶ 39. During this time, Mr. Green laid in bed in "tremendous pain, fearing for his life." *Id.*

Mr. Green underwent surgery at Mercy Hospital on November 18, 2015, to remove the nerve stimulator. *Id.* ¶ 40. Following the operation, on November 20, 2015, Mr. Green briefly returned to the infirmary before being discharged back to general housing at CMCF. *Id.* ¶ 41. Mr. Green ambulated with crutches and received prescription narcotics. *Id.* ¶ 42.

Mr. Green was scheduled to be transferred to home detention on November 25, 2015. *Id.* ¶ 43. On that day, Mr. Green was transferred from CMCF to the Home Detention Unit ("HDU") in preparation for his release and transition home. *Id.* However, when Mr. Green arrived at HDU, it was determined that he was medically unfit for home detention due to his receipt of narcotic pain

medication.  *Id.* ¶ 44. Consequently, Mr. Green was returned to CMCF, where he was held for an additional three weeks beyond his scheduled release date.  *Id.*  ¶ 45.

This suit followed on August 17, 2018.  ECF 3.

## II.  Standard of Review

### A.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in

order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Opposition is supported by one exhibit. It is Mr. Green's answers to Wexford's interrogatories. ECF 24-1. This document is not referenced in the Complaint, nor is it a public record. Therefore, I may not consider it without converting the Motion to one for summary judgment. Fed. R. Civ. P. 12(d); *see also E.I. du Pont de Nemours & Co*., 637 F.3d at 448-49. Because "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery," *E.I. du Pont de Nemours & Co*., 637 F.3d at 448, I shall not consider ECF 24-1 in resolving the Motion.

## B.  Rule 12(f)

A motion to strike is reviewed under Rule 12(f) of the Federal Rule of Civil Procedure. It provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Scandalous material is that which "'unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004) (citation omitted). Matter is immaterial or impertinent if it is not relevant to the issues involved in the action. *See id.*; *see also Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) ("'Immaterial matter is that which has no essential or important relationship to the claim for relief.'") (citation omitted); *Blevins v. Piatt*, No. ELH-15-1551, 2015 WL 7878504, at *2 (D. Md. Dec. 4, 2015). A court may not, however, strike matter as immaterial where the relevance of allegations may turn on disputed issues of fact or law. *See Rackley v. Bd. Trustees of Orangeburg Reg'l Hosp.*, 310 F.2d 141, 143 (4th Cir. 1962) (holding the district court erred in striking a paragraph in the complaint where "it did not conclusively appear that this circumstance was not germane to the claimants' case"); *accord Greater N. Ins. Co. v. Recall Total Info. Mgmt., Inc.*, TDC-13-1829, 2014 WL 5298014, at *4 (D. Md. Oct. 14, 2014).

"Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citations omitted). Therefore, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, PJM-10-1202, 2010 WL 4449419, at *8-9 (D. Md. Nov. 5, 2010) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D. W. Va. 1993)). And, in determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order 'to minimize delay, prejudice and confusion by narrowing the issues for

discovery and trial.'" *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012) (quoting *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009)).

## C. Rule 15

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings. Under Rule 15(a)(1), a complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or Rule 12(b), (e), or (f) motion, "whichever is earlier." Where, however, the plaintiff seeks to amend his complaint more than twenty-one days after service, Rule 15(a)(2) applies. Rule 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Save Our Sound OBX, Inc. v. N.C. Dep't Transp.*, 914 F.3d 213, 228 (4th Cir. 2019); *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Rule 15(a) confers courts with "broad discretion concerning motions to amend pleadings." *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

A district court may deny a motion to amend for reasons "'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth*, 337 F. App'x at 312 (quoting *Foman*, 371 U.S. at 182). However, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards*, 178 F.3d at 242. "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id.* (citation omitted); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." WRIGHT

& Miller, Federal Practice And Procedure § 1487 at 701 (3d ed.) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "the party opposing amendment." *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). And, "if the court is persuaded that no prejudice will accrue, the amendment should be allowed." Wright & Miller, § 1487 at 701.

The case of *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423 (4th Cir. 2011), is noteworthy. There, the Court said, *id.* at 439: "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .'" (quoting *Laber*, 438 F.3d at 427) (alteration in *Newport News*).

The court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701. To be sure, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (emphasis added).

A proposed amendment must also be denied if it is futile. *See Foman*, 371 U.S. at 182. "A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'" *Save Our Sound OBX*, 914 F.3d at 228 (quoting *Johnson*, 785 F.2d at 510); *see also* Wright & Miller § 1487 ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally

insufficient on its face,[] or that fails to include allegations to cure defects in the original pleading,[ ] should be denied.").  "A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX*, 914 F.3d at 228 (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d, 606, 613 (4th Cir. 1980)).

## III.   Discussion

Wexford argues that the Court should dismiss Counts VI and VII of the Amended Complaint. ECF 21-1 at 5.  According to Wexford, plaintiffs' § 1983 claim warrants dismissal because plaintiffs have failed plausibly to allege that Wexford had a policy, custom, or practice of deliberate indifference towards the serious medical needs of CMCF inmates.  *Id.* at 5-6.  Wexford contends that plaintiffs' claim for gross negligence should be dismissed or stricken under Rule 12(f) because it is "needlessly redundant and does nothing more than duplicate Counts I through IV."  *Id.* at 6.

## A.  Count VI (§ 1983 Claim)

### 1.   § 1983 Generally

Plaintiff lodges claims pursuant to 42 U.S.C. § 1983.  *See* ECF 17, ¶¶ 68-76.  They assert that defendants denied medical care to Mr. Green, in violation of the Eighth Amendment or the Fourteenth Amendment to the Constitution.[3]

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Loftus v. Bobzien*, 848 F.3d 278, 284-85 (4th Cir. 2017);  *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins*

---

[3] I pause to note that the Fourteenth Amendment protects the rights of pretrial detainees, whereas the Eighth Amendment applies to convicted prisoners.  *See, e.g.*, *Brown v. Harris*, 240 F.3d 383, 388-89 (4th Cir. 2001).  It appears that Mr. Green was serving a sentence at the relevant time.

*v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Wilcox*, 877 F.3d at 170.

## 2. Monell

A local government entity is subject to suit under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights.  *Id.* at 690-91.  The *Monell* Court explained that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983."  *Id.* at 694; *see Love-Lane*, 355 F.3d at 782.  But, liability attaches "only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017).

Of import here, *Monell* liability has been extended to private entities operating under color of state law, including private prison health care providers.  *See, e.g.*, *West*, 487 U.S. at 49; *Polk Cty. v. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  Standards applicable to municipalities are also applicable to private corporations acting under color of state law.  *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability "'apply equally to a private corporation'" acting under color of state law) (citation omitted).

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained (emphasis in *Connick*) (internal citations omitted):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. But, under § 1983, local governments

are responsible only for "their *own* illegal acts." They are not vicariously liable under § 1983 for their employees' actions.

Thus, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04.

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple*; citations omitted). In addition, "the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances." *Id.*

Notably, "[o]utside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). A policy or

custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, 824 F.2d at 1387; *see Holloman*, 661 F. App'x at 799. In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal citations omitted).

The Fourth Circuit reiterated in *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 575 U.S. 983 (2015), that, to establish a *Monell* claim, the plaintiff "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id.* at 402 (quoting *Spell*, 824 F.2d at 1386-91) (alteration in *Owens*). Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

### 3. Analysis

Wexford argues that the Amended Complaint fails adequately to state a *Monell* violation, contending that it "does not allege any fact about Wexford's policies and customs," but instead asserts only "bare conclusions." ECF 21-1 at 6.

Notably, the Amended Complaint contains just one allegation pertaining to Wexford's liability under § 1983, ECF 17, ¶ 74:

> Defendant Wexford was deliberately indifferent to Mr. Green's serious and known medical needs by failing: (a) to ensure that proper controls and/or protocols existed to monitor prisoners, like Mr. Green, suffering from intractable pain and exposed foreign medical devices; (b) to respond to prisoners' acute medical conditions and severe medical symptoms; (c) to provide prisoners with appropriate treatment for medical conditions while housed at CMCF; (d) to send prisoners to the hospital when necessary or indicated; or (e) to properly train and supervise its agents and employees in diagnosing and administering medical care to prisoners at CMCF.

This lone allegation, without more, does not survive the crucible of Rule 12(b)(6). To be sure, the Supreme Court rejected the notion that *Monell* claims are subject to heightened pleading standards. *See Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993); *Jordan by Jordan*, 15 F.3d at 338. And, the Fourth Circuit opined in *Jordan by Jordan*, 15 F.3d at 339, that, at the pleadings stage, "[t]here is no requirement that [a plaintiff] detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation."

But, *Jordan by Jordan* preceded the seminal cases of *Twombly* and *Iqbal*, in which the Supreme Court announced that the "formulaic recitation of the elements of [a] cause of action," *Twombly*, 550 U.S. at 555, does not present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Fourth Circuit has since explained that "legal conclusions masquerading as factual allegations" do not satisfy Rule 8. *Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012), *cert. denied*, 568 U.S. 1230 (2013). Rather, "a complaint will survive a motion to dismiss only if it

contains factual allegations in addition to legal conclusions." *Id.* Thus, a plaintiff cannot plead a plausible *Monell* claim simply by "parrot[ing] the language of various legal theories without stating any facts to demonstrate that type of conduct." *Id.* at 811.

The case of *Hendrick v. Wexford Health Sources, Inc*., 141 F. Supp. 3d 393 (D. Md. 2015), is instructive. In that case, the plaintiff, an inmate incarcerated at a Maryland correctional institution, lodged § 1983 claims against Wexford and physicians under its employment, alleging that his medical care violated his Eighth Amendment rights. *Id.* at 395. In particular, the plaintiff alleged that he repeatedly informed medical staff that he kept falling unconscious in his cell due to a chronic condition that caused swelling in his brain. *See id.* at 396-97. Despite this, the plaintiff was denied "single cell status" and was instead required to remain in a double cell with another inmate. *Id.* at 397. Among other claims, the plaintiff alleged that Wexford was liable under § 1983 because it "'had or should have had knowledge of this continual deliberate action committed against Plaintiff by its medical agents.'" *Id.* at 400 (quoting the plaintiff's complaint).

Wexford moved to dismiss the plaintiff's § 1983 claim. *Id.* at 400. Judge Chuang observed that the plaintiff "alleges no specific conduct by Wexford, and he does not allege a custom or policy of Wexford that resulted in a deprivation of his constitutional rights." *Id.* at 401. Rather, the plaintiff "in essence s[ought] to hold Wexford liable because it employed the individuals who made the decision," which Judge Chuang explained was "insufficient to establish liability against a private company under § 1983." *Id.* at 401. Thus, the court dismissed the plaintiff's § 1983 claim. *Id.*

The Amended Complaint fails for the same reasons identified in *Hendrick*. The Amended Complaint contains no allegations concerning specific conduct by Wexford. Nor are there any factual averments concerning a persistent and widespread practice of Wexford medical staff denying inmates confined at CMCF adequate medical treatment, such that Wexford had actual or constructive

knowledge of unconstitutional conduct. And, there are no allegations pertaining to Wexford's training or supervision of its medical staff. Instead, the Amended Complaint presents only "legal conclusions masquerading as factual allegations," which are not sufficient to state a viable *Monell* claim. *Cook*, 484 F. App'x at 810.

Accordingly, I shall dismiss Count VI.

### B. Count VII (Gross Negligence Claim)

Wexford seeks to strike or dismiss Count VII under Rule 12(f) on the ground that it is "needlessly redundant" because plaintiffs have lodged a negligence claim against Wexford under a theory of respondeat superior in Count IV. ECF 21-1 at 6.

In their Opposition, plaintiffs did not respond to Wexford's argument regarding Count VII. In doing so, plaintiffs have effectively waived their opposition to the dismissal of that claim. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (same).

Therefore, I shall grant the Motion as to Count VII.

### C. Leave to Amend

As noted, plaintiffs argue in their Opposition that, should the Court dismiss Count VI, they should be granted leave to amend to cure any pleading deficiencies. ECF 24 at 7. Wexford urges the Court to deny that request, arguing that plaintiffs cannot "present the type of factual allegations necessary to state a *Monell* claim against Wexford in good faith and in compliance with the signature requirement of Rule 11." ECF 25 at 7. According to Wexford, it provided plaintiffs with copious documents during discovery that occurred prior to removal, which confirm that Wexford did not have an official policy or custom of denying CMCF inmates medical care nor was Wexford aware of a

history of widespread unconstitutional conduct by its employees. *Id.* at 7-8. Therefore, Wexford contends that "were plaintiffs to include allegations sufficient to state a *Monell* claim in a second amended complaint, [plaintiffs] would need to conjure those allegations from [their] imagination, for they would have no basis in fact." *Id.* at 8.

Wexford's position appears to rest on the assumption that an amendment would be futile because the facts on the ground do not support a *Monell* claim. ECF 25 at 7-8. But, Wexford's gloss on the evidence is just one perspective. Others may hold a different opinion. At this juncture, the Court cannot conclude that, given the facts alleged in the Amended Complaint, plaintiffs' *Monell* claim is facially frivolous or invariably could not survive a motion to dismiss. *Save Our Sound OBX*, 914 F.3d at 228. Indeed, plaintiffs' *Monell* claim falters because of inadequate pleading, not because it is legally defective. *Cf. Perkins*, 55 F.3d at 916-17 (affirming the trial court's denial of leave to amend after the trial court dismissed the complaint based on sovereign immunity grounds, since the proposed amendments would have been dismissed for the same reason).

Notably, Wexford does not assert that plaintiffs are acting in bad faith or that granting leave to amend would be prejudicial or cause undue delay. Thus, in light of the Fourth Circuit's well-established "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)," *Galustian*, 591 F.3d at 729, I shall allow plaintiffs to amend Count VI.

IV.     **Conclusion**

For the reasons stated above, I shall GRANT the Motion (ECF 21).

An Order follows, consistent with this Memorandum Opinion.

Date: February 13, 2020

_____/s/_____
Ellen L. Hollander
United States District Judge